**TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY and Teamsters Health and Welfare Trust Fund of Philadelphia and Vicinity and Schaffer, Charles J., Jr.,**

v.

**PHILADELPHIA FRUIT EXCHANGE and Campese, Armand.**

Civ. A. No. 83–4921.

United States District Court, E.D. Pennsylvania.

Feb. 20, 1985.

---

Stephen F. Ritner, Philadelphia, Pa., for plaintiffs.

John C. Wright, Jr., Robert M. Goldich, Philadelphia, Pa., for defendants.

MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This is an action commenced by the plaintiffs, Teamsters Pension Trust Fund of Philadelphia and Vicinity and Teamsters Health and Welfare Trust Fund of Philadelphia and Vicinity ("Pension Fund", "Welfare Fund" or collectively "Funds") against Philadelphia Fruit Exchange, Inc. and Armand Campese ("Defendants") to collect unpaid fringe benefit contributions allegedly due to the Funds from Defendants. Presently pending before this court are cross motions for summary judgment. The issue presented herein is, where it is discovered by audit that an employer has made overpayments to a pension or welfare fund in certain years and it is also discovered in the same audit that the employer has been delinquent to the same fund in certain other years, can that employer, consistent with the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001a–1461 (Supp. IV 1980) ("ERISA"), set off the delinquent amounts by the amount overpaid. For the reasons discussed *infra*, I conclude that the employer cannot. The facts, as stipulated by the parties, are set forth below.

Jurisdiction is based on sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145 (Supp. IV 1980), Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) (Supp. IV 1980) ("LMRA") and, on Section 9.1(a) and (b) of the Pennsylvania Wage Payment and Collection Law of 1961, as amended, Pa. Stat.Ann. tit. 43 § 260.9a(a) and (b) (Purdon Supp.1984–1985) ("WPCL").

Plaintiff Pension Fund is a "multiemployer plan" and an "employee benefit plan" within the meaning of subsections 3(2), (3) and (37) of ERISA, 29 U.S.C. § 1002(2), (3) and (37) (Supp. IV 1980). The Pension Fund was established and is maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5)

(Supp. IV 1980) for the sole and exclusive purpose of providing retirement benefits for eligible employees (and their dependents) who are in collective bargaining units covered by collective bargaining agreements between labor organizations affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters") and various participating employers.

Plaintiff Welfare Fund is a "multiemployer plan" and an "employee benefit plan" within the meaning of subsections 3(1), (3) and (37) of ERISA, 29 U.S.C. § 1002(1), (3) and (37) (Supp. IV 1980). The Welfare Fund is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5) (Supp. IV 1980), for the purpose of providing medical, hospitalization and other health benefits to eligible employees (and their dependents) who are in collective bargaining units covered by collective bargaining agreements with labor organizations affiliated with the Teamsters and various participating employers.

This action is brought on behalf of the Funds by Charles J. Schaffer, Jr., the Funds' Administrator, who is a "fiduciary" as that term is defined in Section 402(a)(2) of ERISA, 29 U.S.C. § 1102(a)(2) (Supp. IV 1980).

Plaintiffs, Pension and Welfare Funds are organizations or parties to whom any type of wages are payable within the meaning of subsections 9.1(a) and (b) of the WPCL, Pa.Stat.Ann. tit. 43 § 260.9a(a) and (b) (Purdon Supp.1984–1985).

Defendant Philadelphia Fruit Exchange, Inc. ("PFE") at all times relevant hereto was engaged in conduct and/or was doing business in the Commonwealth of Pennsylvania, and continues to engage in conduct and/or do business within the Commonwealth of Pennsylvania, and has employed and continues to employ persons to engage in conduct and do business on behalf of said Defendant, and, as such, is an employer within the meaning of Section 2.1 of the WPCL, Pa.Stat.Ann. tit. 43 § 260.2a (Purdon Supp.1984–1985).

At all times relevant hereto, defendant Philadelphia Fruit Exchange, Inc. was and remains a party to a collective bargaining agreement between itself and Teamsters Local Union No. 929 ("Union") pursuant to which PFE is obligated to make certain monthly contributions to the plaintiff Pension and Welfare Funds in contractually-designated amounts.

The collective bargaining agreements between PFE and the Union cover the time periods:

(a) July 23, 1976 through July 23, 1979;

(b) July 23, 1979 through July 24, 1982; and,

(c) July 25, 1982 through July 27, 1985.

Defendant Armand Campese was the controller and Vice-president of PFE during the period November 24, 1975 through June 30, 1983, and, as such, was an employer within the meaning of section 2.1 of the WPCL, Pa.Stat.Ann. tit. 43 § 260.2a (Purdon Supp.1984–1985).

In or about June, 1983, the Funds conducted a routine randomly-selected field audit of the payroll books and records of PFE for the period of January 1, 1978 through December 31, 1982. The audit revealed unpaid contributions for certain years and overpayments for other years as follows:

## DELINQUENCIES

Welfare

| | |
|---|---|
| 1979 | $ 16.78 |
| 1981 | 209.38 |
| 1982 | 540.08 |
| Total Unpaid Welfare Contributions | $ 766.24 |

Pension

|  |  |  |
|---|---|---|
| | 1980 | $ 348.00 |
| | 1981 | 442.00 |
| | 1982 | 1,536.00 |
| Total Unpaid Pension Contributions | | $2,326.00 |
| Total Unpaid Welfare & Pension Contributions | | $3,092.24 |

### OVERPAYMENTS

Welfare

|  |  |  |
|---|---|---|
| | 1978 | $1,165.98 |
| | 1980 | 16.80 |
| Total Welfare Overpayment | | $1,182.80 |

Pension

|  |  |  |
|---|---|---|
| | 1978 | $1,095.00 |
| | 1979 | 370.00 |
| Total Pension Overpayment | | $1,465.00 |
| Total Welfare & Pension Overpayment | | $2,647.78 |

The unpaid contributions and overpayments were discovered by the Funds as a result of the audit and were revealed to the defendants when the Funds forwarded copies of the audit to PFE.

The employees listed on the audit are, or were, during the period of time covered by the audit, working in covered employment as defined by the various collective bargaining agreements; and, defendants were obligated to make contributions to the Funds on behalf of said employees. Prior to the conduct of the random audit, the Funds had neither actual nor constructive knowledge of either the unpaid or overpaid contributions.

As noted previously, both plaintiffs and defendants have moved for summary judgment in this case. However, summary judgment cannot be granted unless it can be shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). After careful consideration of the record in this case, including, but not limited to the stipulation of facts entered into by all parties, I find there to be no genuine dispute of fact. Thus, the critical question to be determined is whether plaintiffs or defendants have shown that they are entitled to judgment as a matter of law. Plaintiffs have so demonstrated, while defend-

ants have not. Accordingly, plaintiffs' motion will be granted, while defendants' motion will be denied.

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (Supp IV 1980) provides in pertinent part that "[a] civil action may be brought by a ... fiduciary to enforce any provision of this subchapter ..." In that same subchapter at section 515, 29 U.S.C. § 1145, ERISA provides:

Delinquent contributions

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Defendants herein have claimed no illegality which would preclude them from making the full contribution to the Funds as required by the collective bargaining agreements in this case. Defendants have in fact stipulated to the validity of the audit which shows, *inter alia*, certain delinquencies. Thus, defendants have stipulated to behavior which was not in compliance with section 515 of ERISA.

Plaintiffs have brought suit under the above quoted section 502(a)(3) of ERISA to enforce section 515. Since defendants concede, by stipulation, non-compliance with section 515, and plaintiffs seek to enforce section 515, plaintiffs are entitled to judg-

ment as a matter of law as to the delinquent amounts.

Additionally, subsection (g)(2) of section 502 ERISA provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [section 515, 24 U.S.C. § 1145,] in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621].

29 U.S.C. § 1132(g)(2) (Supp. IV 1980). Thus, plaintiffs are also entitled to the relief set forth in the above quoted provision as a matter of law.

Moreover, since plaintiffs have also brought suit under the WPCL, they are similarly entitled to judgment as a matter of law as to the unpaid contributions and reasonable attorney's fees under state law. *See* Pa.Stat.Ann. tit. 43 §§ 260.3(b) and 260.9a(f) (Purdon Supp.1984–1985). By stipulation, defendant Armand Campese, Controller and Vice-President of defendant

PFE, was at all relevant times an employer within the meaning of the WPCL. *See* Pa.Stat.Ann. tit. 43 § 260.2a (Purdon Supp. 1984–1985). Thus, defendants Campese and PFE are jointly and severally liable under WPCL. *See Philadelphia Carpenters Health and Welfare Fund v. Ambrose*, 727 F.2d 279, 283 (3d Cir.1983).

Defendants, while conceding statutory violations in the form of unpaid contributions, argue that they are entitled, as a matter of law, to set overpayments made to the Funds in different years against those unpaid contributions.[1] In support of their position, defendants rely on section 403(c)(2)(A) of ERISA, as amended, 29 U.S.C. § 1103(c)(2)(A) (Supp. IV 1980). That section provides in pertinent part that "[i]n the case of a contribution ... made by an employer to a multi-employer plan by mistake of fact or law ... [ERISA] *shall not prohibit the return of such contributions* ... to the employer..." 29 U.S.C. § 1103 (c)(2)(A) (Supp. IV 1980) (emphasis added).

While the language that defendants rely on may reasonably be read to permit, not require, the return of overpaid contributions, *see Crown Cork & Seal v. Teamsters Pension Fund*, 549 F.Supp. 307, 311 (E.D. Pa.1982), *aff'd mem.*, 720 F.2d 661 (3d Cir. 1983), it can in no way be read to require the deduction of such overpaid contribution amounts from underpaid contribution amounts which *are* affirmatively required (by section 515 ERISA) to be paid in full. The language of section 403(c)(2)(A) has been interpreted to allow an action against pension or welfare funds by employees for the return of monies based on an unjust enrichment theory. *See e.g. Peckham v. Board of Trustees of the International Brotherhood of Painters*, 719 F.2d 1063, 1066 (10th Cir.), *reaff'd as modified*, 724 F.2d 100 (10th Cir.1983). These employees' suits are based on the federal common law of pension plans. *See Murphy v. Heppenstall Co.*, 635 F.2d 233, 237 (3d Cir.1980),

---

**1.** As noted previously, the overpayments were discovered in the same audit as the unpaid contributions.

*cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).

Based on the same language at least one court has recognized a statutory cause of action for employers seeking the return of overpaid pension fund contributions. *See E.M. Trucks, Inc. v. Central States,* 517 F.Supp. 1122 (D.Minn.1981), *but see Crown Cork & Seal v. Teamsters Pension Fund, supra, see also Pressrooms Union—Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

In both situations, suits by employees and suits by employers, the action permitted was one for the *return* of monies mistakenly overpaid. However, no decision has been called to my attention where a court permitted an employer to deduct overpayment amounts, which might eventually be subject to return, from then delinquent contributions. Thus, the mere fact that the defendants might ultimately be entitled to the return of mistakenly overpaid contributions under section 403 [2] does not demonstrate that defendants are entitled to set off as a matter of law.

Moreover, a violation of section 515 by an employer not only vests the fiduciary plan administrator, suing to enforce that provision, with the right to receive the unpaid contribution, but also the right to receive attorney's fees, interest and/or liquidated damages. *See* 29 U.S.C. § 1132(g), quoted *supra.* Thus, to allow an employer to deduct the amount of the mistakenly overpaid contribution from the amount owed to the fund would not only reduce the aggregate amount owed to the administrator under the statute, without any authority, but also reduce the amount of liquidated damages and/or interest to which said administrator is statutorily entitled. Defendants have similarly not pointed to any authority which would allow, much less require, this concomitant abrogation of the pension plan fiduciary administrator's rights under the statute. Thus, defendants are not entitled to judgment as a matter of law in this case. Conversely, plaintiffs are entitled to such judgment. Accordingly, plaintiffs' motion will be granted, while defendants' motion will be denied.

An appropriate order follows.

## ORDER

AND NOW, this 20th day of February, 1985, for the reasons set forth in the foregoing memorandum, IT IS ORDERED that plaintiffs' motion for summary judgment is GRANTED, and defendants' motion for summary judgment is DENIED.

' IT IS FURTHER ORDERED that judgment will be entered in favor of the Teamsters Health and Welfare Fund of Philadelphia and Vicinity and Teamsters Pension Trust Fund of Philadelphia and Vicinity and against Philadelphia Fruit Exchange, Inc. and Armand Campese jointly and severally for reimbursement for all costs, including reasonable attorneys' fees, incurred in connection with the collection of all unpaid contributions, upon the filing of a certification of attorneys' fees, costs and expenses within fifteen (15) days from the date of this order.

---

**2.** Whether this section permits an independent cause of action for employers against pension or welfare funds, by way of claim or counterclaim, for the return of mistakenly overpaid contributions is not before this court. Therefore, I cannot and do not make any determination in that regard.